Daniel R. Warner, Esq.
Arizona Bar # 026503 (*Pro Hac Vice Pending*)
**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Email: dan@kellywarnerlaw.com
Tel: (480) 331-9397
Fax: (866) 961-4984

Matthew S. Steinberg (SBN 82969)
**COZEN O'CONNOR**
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Email: msteinberg@cozen.com
Tel: (213) 892-7924
Fax: (213) 892-7999

*Attorneys for Plaintiff*
AMERITECH FINANCIAL, a California
corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERITECH FINANCIAL, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT P. FARRINGTON, JR. and LISA FARRINGTON, husband and wife; THE COLLEGE INVESTOR LLC, a California limited liability company; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. **'16CV2564 WQHAGS** <br><br> **COMPLAINT FOR:** <br><br> (1) FALSE OR MISLEADING ADVERTISING [15 U.S.C. § 1125(a)]; <br> (2) FALSE OR MISLEADING ADVERTISING [CAL. BUS. & PROF. CODE § 17500 *et seq*]; and <br> (3) UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §17200 *et seq* AND COMMON LAW] <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

For its claims for relief against Defendants, Plaintiff Ameritech Financial ("Plaintiff") alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This case arises out of Defendants' false advertising and unfair competition in violation of the Lanham Act § 43(A)(1)(B), 15 U.S.C. § 1125; therefore, the Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

2.      Based upon 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's state law claims.

3.      Plaintiff is a corporation duly created, existing and operating under the laws and ordinances of the State of California with its principal place of business in El Dorado County, California.

4.      Defendants Robert P. Farrington, Jr. ("Farrington" or "Defendant") and Lisa Farrington ("L. Farrington"), husband and wife, reside in the State of California, San Diego County.

5.      Upon information and belief, all acts of Defendants as alleged herein were performed for the benefit of his marital community with his spouse and/or vice versa.

6.      Upon information and belief, Defendant The College Investor LLC ("TCI") is a California limited liability company with its principal place of business in San Diego County, California.

7.      Upon information and belief, Defendant is the owner and manager of TCI.

8.      Defendant, L. Farrington, and TCI will be hereinafter collectively referred to as "Defendants."

9.     Upon information and belief, all Defendants are residents of California and are therefore subject to general personal jurisdiction of the courts located in the State of California.

10.     One or more of the named Defendants reside in this judicial district and all Defendants are residents of the California; therefore, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1).

11.     Additionally, Defendants' actions, upon which the allegations in this Complaint are based, were performed in this judicial district.

12.     Therefore, upon information and belief, jurisdiction and venue are proper in this Court.

13.     Upon information and belief, each Defendant was the agent, servant, representative and/or employee of each of the other Defendants, and that in doing the things hereinafter alleged, each Defendant was acting within the course and scope of the Defendant's authority, with the permission, knowledge, consent and ratification of each of the other Defendants.

## FACTS

14.     All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

15.     Plaintiff is a student loan assistant company ("SLAC") that has helped thousands of student loan borrowers find their way to financial freedom and once again feel empowered by their education.

16.     More specifically, Plaintiff strives to provide borrowers with (1) a detailed understanding of their finances, budget, family household, and professional status as it relates to the different loan programs available; (2) a detailed understanding of the programs that exist which the borrower may qualify for, their advantages and disadvantages, as well as how they directly apply to the borrower's specific student loan situation; (3) important student loan industry information,

program modifications or changes, and foreseeable government action relating to student loan borrowers; and (4) proper document preparation and filing for specific federal programs, strategically targeted form submission time lines, as well as status updates for the programs applied for through the Department of Education.

17.     Defendant   and/or   TCI   own   and   operate   the   website TheCollegeInvestor.com (the "Site").

18.     The Site offers a wide variety of loan and investment products and services provided by Defendants, including programs, courses, E-books, and guides.

19.     Some of the products and services are offered by Defendants free of charge on the Site, while others are available for purchase.

20.     In exchange for compensation, Defendants also advertise and promote third-party products and services on the Site.

21.     Defendants primarily advertise by writing articles and blogging on the Site.

22.     Generally, Defendants earn revenue from the Site in two different ways: (1) selling Defendants' own products and services through advertising and promoting them on the Site; and (2) advertising and promoting third-party products and services on the Site.

23.     Defendants have been expanding the Site since 2009.

24.     Generally, the more content on a website, the more likely the website is to rank high in the search engine results when users search for relevant key words contained in the content.

25.     One way Defendants have made the Site rank high in the search engine results is by blogging on the Site, which includes writing articles on the Site about relevant topics such as student loan debt.

26.     Another way Defendants have made the Site rank high in the search engine results is by allowing third party users/readers to post comments and questions

LEGAL\28329899\1

on the articles written by Defendants, and then responding to those comments or questions.

27.     After blogging on the Site for several years and writing numerous articles related to student loan debt, the Site ranks highly in the search engine results for key words pertaining to student loan scams.

28.     Defendants, by and through Farrington, have authored countless articles, comments, and posts on the Site urging borrowers to avoid using SLACs.

29.     However, while doing so, Defendants make several false and misleading statements on the Site.

30.     As a result, Plaintiff's prospective customers are being diverted away from doing business with Plaintiff, as well as other SLACs, and steered towards the competing products and services being promoted on the Site, including the "Student Loan Freedom Program," which is for borrowers who "[d]on't want to pay a 'Student Aid Company' over $400." *See* Site Product page, attached as **Exhibit A** hereto.

31.     Additionally, Defendants deceptively purport to be an advocate for borrowers, who are on a mission to save them money, but the reality is that Defendants are steering many unknowing borrowers towards either paying for Defendants' products or services, or those of a third party lender that are being offered on the Site.

32.     In several articles and comments, Defendants urge borrowers to seek to qualify for certain student loan programs without any assistance and repeatedly tell borrowers how simple it is to get qualified; however, Defendants are well aware that many borrowers will try this, end up frustrated but scared to deal with a SLAC (thanks to Defendants) and then go back on the Site for more "guidance" (i.e. ready to purchase a product or service being offered or promoted by Defendants, who are now perceived to be experts by the borrower).

COMPLAINT

33.    This design is intended to slowly build-up the reader's confidence in the Defendants, alienate the logical competitor (which is a SLAC), and convince the unknowing borrower to purchase the products or services on the Site.

34.    On the Site, Defendant claims to be "America's Millennial Money Expert™ and America's Student Loan Debt Expert™" and that the Site "is the #1 resource for helping millennials get out of student loan debt and start building real wealth for their future." *See* Site About page, attached as **Exhibit B** hereto.

35.    However, Defendant currently works full-time as a general manager of a local Target retail store.

36.    Additionally, Defendant boasts about being a "hustler" on SideHustleNation.com who is making $10,000 a month from "[b]logging [p]art-[t]ime." *See* Side Hustle Nation post, attached as **Exhibit C** hereto.

37.    Upon information and belief, Defendant earns more income from the Site than he does working as a general manager at Target.

38.    The level of deceptiveness of Defendants' false and misleading statements is also amplified by Defendant's inadequate legal disclaimers.

39.    Defendants published an article entitled "Top Student Loan Scams," which purports to be last updated on November 15, 2015 (the "Top Loan Scam Article"). *See* Top Loan Scam Article, attached as **Exhibit D** hereto.

40.    While discussing the different types of purported student loan scams, Defendants mix in their own reviews of certain third-party products and services for which Defendants receive advertising revenue and/or referral fees.

41.    The reviews or plugs to these products and services are relevant to the topics being discussed in the article and are blended in to be a part of the article so that many readers are unaware that they are actually reading an advertisement.

LEGAL\28329899\1

42.    Defendants place what are sometimes referred to as affiliate links in the reviews or plugs; the reader can click on these affiliate links and be brought to the third-party website where the purchase can be made.

43.    In the Top Loan Scam Article, Defendants discuss the purported "Loan Consolidation Scam" and then mention that "[g]oing through any lender that Credible selects for you is NOT a scam."  *See* Top Loan Scam Article, Exhibit D hereto.

44.    The word "Credible" contains a hyperlink to this company that pays Defendants advertising revenue and/or a referral fee when borrowers use this link and/or sign up after clicking on the link.

45.    However, Defendants fail to have a conspicuous disclaimer regarding their business relationship with "Credible" near the hyperlinks.

46.    In fact, a borrower would have to scroll down through 171 pages, and look for another hyperlink titled "How We Make Money," which is in small print at the bottom right side of the page.   And then, even after reading the purported disclaimer, it is still unclear how and the extent to which Defendants are being compensated.

47.    On the purported disclaimer page, Defendants downplay how much revenue is being generated by the Site, and Defendants' significant financial incentive, to steer readers towards purchasing the products and services being promoted on the Site.   Defendants do this by stating that "[t]his compensation enables us to maintain our growing site, and provide current content, many [sic] of which we don't receive compensation for."  *See* Disclaimer page, attached as **Exhibit E** hereto.

48.    Additionally, in the Top Loan Scam Article, Defendants discuss the purported "Student Loan Debt Elimination Scam" and urge borrowers who are worried about getting scammed to "[s]imply head over to Credit Karma and get a free credit report and monitor your credit." *See* Top Loan Scam Article, Exhibit D hereto.

COMPLAINT

49.     Defendants again fail to have a conspicuous disclaimer pertaining to their business relationship with "Credit Karma" near the hyperlinks.

50.     Defendants' actions are in violation of Section 5 of the Federal Trade Commission Act ("FTC Act"), which prohibits "unfair and deceptive acts or practices," false advertising, and the failure to disclose a material connection for product reviews.

51.     The Guidelines implemented by the FTC through the FTC Act state that, for an affiliate disclosure to be "clear and conspicuous," the reader should be able to "see both the review containing that disclosure and the link at the same time."  *See* https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-endorsement-guides-what-people-are-asking (last visited 05/13/2016). The FTC warns that "if the product review containing the disclosure and the link are separated, readers may lose the connection."  *Id*. at 18-19. And that "[p]utting disclosures in obscure places—for example, buried on an ABOUT US or GENERAL INFO page— . . . isn't good enough."  *Id*.  Additionally, "[a] single disclosure on your home page" is inadequate "because people visiting your site might read individual reviews or watch individual videos without seeing the disclosure on your home page." *Id*. at 11.

52.     Defendants' disclosures are not reasonably proximate to any review or affiliate link and are essentially buried in a "general info" page (the "Deceptive Conduct").

53.     Defendants make a number of literally false, as well as misleading, statements in the article,[1] "Is Your Student Loan Repayment Company A Scam?" (the "Article"), including, but not limited to the following (collectively the "False Statements"):

> A.     "Scam companies are student loan assistance companies who charge you for a service and then never do it or don't do it 100%.

---

[1] This article has been attached as **Exhibit F** hereto.

For example, the firm might advertise student loan forgiveness or lower student loan payments.  They charge you $599 to do it. You pay it, and the firm does nothing.  This is a scam."

       i.     The above statements are false/misleading because: There are many instances when a SLAC cannot "do it 100%" because the customer failed to provide the necessary documentation or information needed to complete the process.  A SLAC is not a scam simply because the customer fails to provide the basic documentation or information needed to start the process.

B.     "However, many totally legitimate student loan assistance companies simply charge you for services that you go do yourself for free.  For example, they might advertise student loan consolidation, and charge you $399 to consolidate your student loans.  But student loan consolidation is a free service offered by the Department of Education and you can sign up and do it yourself for free at StudentLoan.gov.  This is paying for something unnecessary."

       i.     The above statements are false/misleading because: For some people it is necessary to employ a SLAC to intervene because the consumer cannot navigate the process on their own and does not have the ability to do so. Many lenders make the process notoriously difficult.  "In fact, a recent General Accounting Office (GAO) report found nearly 70 percent of those borrowers who default on their student loans could have qualified for an income-driven repayment plan that limits monthly loan payments to 10 percent of earnings. But, these borrowers weren't aware of the options or made aware of them by their loan service providers when they first saw signs of trouble." *See*

http://www.studentloanhelp.org/articles/not-doing-enough-loan-service-providers-under-investigation/.   Also, the Consumer Financial Protection Bureau ("CFPB") launched a public inquiry into student loan servicing practices specifically because the practices can make paying back loans a stressful or harmful process for borrowers. And contrary to Defendants' statements and implications, there is no one-size-fits-all solution.  If it was so easy not nearly as many students would be in default.   For many consumers, it is necessary to employ a SLAC.

C.    "The problem is, these scams usually involve the company taking your money, your student loans left in forbearance, and the borrower finds out in 6 months when the forbearance expires that nothing was done."

    i.    The above statements are false/misleading because: When the customer is in forbearance, the SLAC is usually waiting on the customer to provide additional documents to further the process.  Clients may be in forbearance until they perform, which may be for 1 day or 1 year. Also, SLACs are required to use a dedicated service provider to function as an escrow account for each and every customer.  The customer deposits their money into the account according to their payment schedule determined at the time of enrollment, the funds accrue in the account while the work is being done, and the SLAC does not get paid nor does the SLAC have a right to the funds until the SLAC demonstrates proof of work being completed and the first payment is made on the new program.  Moreover, Plaintiff is only paid 1/5 of its fee for the submission and approval of a forbearance.

LEGAL\28329899\1

D.     "A true company that is going to help you will not put your student loans into forbearance."

　　　　i.     The above statements are false/misleading because: Forbearance is usually part of the process.  Loans are usually placed into forbearance during the consolidation or other program qualification process.  Also, in most cases, the customer requests that the loans be placed in forbearance so they can experience payment relief immediately.  And more importantly, a forbearance can be used to retroactively cure recent delinquencies.  This statement is literally false.  And Defendants demonstrate the same by later stating in another comment that "[i]t's right in that they are putting your loans into deferment/forbearance while they process your paperwork . . . ." *See* Article, <u>Exhibit E</u> hereto, page 1.

E.     "The other big problem that borrowers face is not necessarily scammers, but companies who simply charge for services that borrowers should pay for.  These companies equate it to paying someone to prepare your taxes, but tax preparation typically doesn't cost over $500 and at the same time, the tax preparer at least had to take some classes and be certified by the IRS to file for you."

　　　　i.     The above statements are false/misleading because: Many SLACs, like Plaintiff, receive training and certification.  And many companies are licensed and bonded.  Plaintiff is in the process of getting licensed and bonded in 22 states, even though no states require it.  Additionally, Defendants' blanket statement that borrowers should never pay for a SLAC is false and misleading as discussed above.

F.     "For example, student loan consolidation can be done for free at StudentLoans.gov, but these companies will charge $399 to do it for you. Or lowering your repayment – all it takes a is a15 (sic) minute phone call to your lender and you can get your payments lowered by changing your repayment plan.  Why pay $500-6000 for it?"

      i.     The above statements are false/misleading because: More times than not, it takes much more than a 15 minute phone call. It can be extremely complicated depending on the type of loans, the customer's future goals, the number of loans, etc.  The customer is required to correctly fill out paperwork, send in income verification including but not limited to tax returns, paystubs, or statement of income, and the majority of the time a consolidation is required in order for the loans to be eligible for certain programs.  These statements are literally false.

G.     "If you have this happen to you, it's a big giveaway that you are likely going to be scammed, or at least asked to pay for something you don't need. Forbearance – your loans should never be put into forbearance by a company honestly trying to help you.  Don't Make Payments – no company should tell you explicitly not to make payments. Always pay the minimum on your statement.  Pay Us, Not Them, We'll Make Your Payments For You – big red flag, just shady having someone else make payments on your behalf. What are they hiding from you? Did They Contact You? – if they contacted you and you didn't contact them, this is a big red flag because you don't truly know who they are. Document Processing Company – if you see this language on their website (scroll to the bottom) run. These are typically companies that will charge you for services you don't need.  Any Company Claiming To Be

Working With The Department Of Education – None of these companies work with the Department of Education, and the Department of Education will never call you.  All correspondence with them will be via mail, so don't fall for anyone telling you this."

        i.     The above statements are false/misleading because: A company is not a scam simply because the company helps people with student loans.  Forbearance is usually part of the process.  Loans are usually placed into forbearance during the consolidation or other program qualification process.  Defendants' statements in this regard are literally false.  Most licensed and bonded consumer credit counselling companies will make payments for the customer and it is lawful service that some customers need to help keep them current.  Just because a company advertises does not mean the company is a scam or will likely scam the customer.

H.    On June 15, 2016 at 9:37 am, "No – because, once again, everything they are offering you is:

1. Not guaranteed, because they are just paperwork processing companies and they can file any paperwork even if it's not valid

2. All they are doing is signing you up for Public Service Loan Forgiveness and changing your repayment plan to IBR or PAYE, both of which you can easily do for free in the same amount of time you're talking to this company[.]  Oh, and no, they don't restructure your loan payment yearly… You have to send in a certification yearly based on your tax return and the government adjusts your payment to always be 10 to 15% of your discretionary income. Don't let this company's help fool you.  They may talk all nice and sound like they are really doing you a service, but why would you pay $500 or more (you didn't say, but that's

an educated guess) for something you can easily do for free.  I'd love to know how much they wanted to charge you for this."

         i.    The above statements are false/misleading because: There is no "signing up" for public service loan forgiveness.  The customer must have the right types of loans, which is where consolidation comes into play, and then the customer must be either in an IBR, ICR, or PAYE program to accumulate the total number of qualified payments for PSLF to happen.  The certification that is sent in yearly is not just based on tax returns; customers can use paystubs or other stated forms of income.  The payment is NOT "always 10% to 15% of the borrowers discretionary income;" this statement is blatantly false.  To qualify for PSLF, the customer must also be an employee of a qualifying organization.  An employee is someone who is hired and paid by the organization.  If a customer is a contracted employee, the organization that hired and pays the customer must qualify, not the organization where the customer performs the work.  A qualifying organization is a government organization or a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code (IRC).  Service in an AmeriCorps or Peace Corps position is also qualifying employment.  The type of services that these organizations provide does not matter for PSLF purposes.  A private not-for-profit organization that is not a tax exempt organization under Section 501(c)(3) of the IRC may be a qualifying organization if it provides certain specified public services.  These services include emergency management, military service, public safety, or law enforcement services; public health

services; public education or public library services; school library and other school-based services; public interest law services; early childhood education; public service for individuals with disabilities and the elderly.  The organization must not be a business organized for profit, a labor union, or a partisan political organization.  Also, the customer generally must be employed full-time by the employer, which is defined as being at least an annual average of 30 hours per week.  If a customer is employed in more than one qualifying part-time job simultaneously, the customer may meet the full-time employment requirement if the customer works a combined average of at least 30 hours per week.

ii.     The above statements made by Defendants are a prime example of Defendants' "confidence techniques." Defendants go out of their way to downplay just how complicated the process can be so that the borrowers will try it on their own, end up frustrated but scared to deal with a SLAC (thanks to Defendants), and back on the Site for more "guidance" (i.e. ready to purchase a product or service being offered or promoted by Defendants, who are now perceived to be experts by the borrower). Given that Defendants offer -- for a sale -- a special "course" on Public Service Loan Forgiveness Training, Defendants are clearly aware that borrowers cannot simply "sign up" for PSLF.  *See* Site Product page, Exhibit A hereto, page 1.

I.      "Hi J – you are correct to be worried, but at the same time, PSLF is a legit program.  If you're under the correct repayment plan, and work for 10 years in public service, you get your loans forgiven tax free."

LEGAL\28329899\1

       i.     The above statements are false/misleading because: The customer must have the right type of loans, and the customer must make 120 qualified payments – not just 10 years working in public service.  As discussed in ¶ H.i. above, the requirements are much more complicated than described, and Defendants are clearly aware of this given the course available for purchase on the Site.

J.     "Hi Candice.  I've never heard of them, but follow the guidelines above.  You should NEVER pay them for help setting up PAYE.  Realize that PAYE is a free government plan, and how they calculate your income is based on your tax returns.  This company will likely ask you to file your taxes married-filing-seperately (sic).  This will allow your loan payment to be based on just your income, not your household income.  HOWEVER (there's always a however), you will pay more taxes this way.  You need to really do that math and see if the lower payment is more than the higher taxes. In some cases it is, in others it isn't."

       i.     The above statements are false/misleading because: PAYE can also be calculated based on paystubs, or a statement of income.  Also, a customer will not always pay more in taxes when married but filing separately.  Notably, Defendant is not licensed to be giving tax advice or any other financial advice.

K.     "This place sounds like it was going (sic) you a whole lot of wrong.  First, you're paying them $695 directly for them to just change your repayment plan to IBR.  You can do that for free by calling your own lender or going online to studentloans.gov.  But, you're still in school, so you should be in deferment and not paying at all. Second, if you are going to work full time for a non-profit, you get Public Service

LEGAL\28329899\1

Loan Forgiveness (PSLF).  This is another FREE program you can sign up for with your lender or online at studentloans.gov. Either way, you shouldn't pay this company for help.  You can do it all yourself for free – when you're done with school take a couple hours and figure it out."

      i.    The above statements are false/misleading because: Customers do not just "get" Public Service Loan Forgiveness. Customers must make 120 qualified payments working for certain type of employer, have the right type of loans, and be in the right type of repayment program.  It is not nearly as easy as Defendants claim, and many people may not be able to simply "take a couple hours and figure it out."  Again, given that Defendants offer -- for a sale -- a special "course" on Public Service Loan Forgiveness Training, Defendants are clearly aware that borrowers cannot simply "sign up" for PSLF.

      ii.    The above statements made by Defendants are another prime example of Defendants' "confidence techniques." Defendants go out of their way to downplay just how complicated the process can be so that the borrowers will try it on their own, end up frustrated but scared to deal with a SLAC (thanks to Defendants), and back on the Site for more "guidance" (i.e. ready to purchase a product or service being offered or promoted by Defendants, who are now perceived to be experts by the borrower).

      L.    On July 26, 2016 at 7:12 am -- "I can't agree that $800 is a worthwhile investment to literally fill out your name, address, telephone, SSN, and then checking a box for 'IBR'.  The form is simple and can also be done online on StudentLoans.gov. Job applications require more information than this form.  For $800, a better investment would have

been to put that towards your loans.  Given the average student loan debt is about $37,000, that $800 is 2% of the loan you could have paid off instantly.  However, if you finances (sic) that $800 on a credit card, it's going to cost you even more and wasn't probably a wise investment."

        i.     The above statements are false/misleading because: Filling out just name, address, telephone, and SSN is not nearly close to the amount of information that is required; there are many other pieces of information that are required, as well as income documentation.

    M.    On August 16, 2016 at 10:08 pm – "Your Federal loans are all handled by a loan servicer, which could be Navient (realize that Sallie Mae and Navient are two different companies – Sallie Mae does private loans and Navient does Federal loans).  All Federal loans are owned by the US Government and the rules are simple.  If you have Federal loans, simply call Navient and work with them for free. Super simple.  You can also go online to StudentLoans.gov and do it yourself without talking to anyone.  If you have private loans, these are like a car loan or mortgage. Your payment is set and there is no negotiating it.  If you want to change it, you simply get a new loan.  This is called student loan refinancing. We recommend Credible for this – they are a simple comparison tool that finds you the best rate.  Finally, you can't compare your payments to your friends.  Everyone's payments under IBR (income based repayment) will be different and based on their income – it will be 10-15% of your monthly paycheck.  You can easily do that yourself by calling Navient or going online to StudentLoans.gov.  Don't pay this company for this, if you can fill out a job application, you can easily fill out the form required. Finally, student loan consolidation is an option for your Federal

loans, but it won't change anything. It just combines them to make it easy to manage."

        i.     The above statements are false/misleading because: A customer's payment under an IBR program is not just based on income; it is also based on dependents and types of loans they have.  Again, if this process was as simple as claimed, 70 percent of qualifying borrowers would not have defaulted on their student loans.

N.    On August 18, 2016 at 1:43 pm – "Does it sound right? I mean, there are two answers here:

1.  It's right in that they are putting your loans into deferment/forbearance while they process your paperwork, then they are switching you to IBR repayment plan. You pay $119 per month (at your current income level – always subject to change in the future and you have to recertify each year), and you get taxable forgiveness at the end.

2. You're paying $1632 to do this – $800 up front + $696 (this is $235 minus $119) + $136 ($255 minus $119).  That's insane and in my book "isn't right" because you shouldn't pay to have these things done. Look, if you want to sign up for IBR, call your lender or go online to StudentLoans.gov.  It will take you about 20 minutes and you'll be set – for FREE."

        i.     The above statements are false/misleading because: The statements directly contradict Defendants' other statement that "your loans should never be put into forebearance . . . ." This demonstrates that Defendants knowingly published false statements because Defendants are admitting that, as part of the process, loans are usually placed into forbearance during the

19

LEGAL\28329899\1

consolidation or other program qualification process.  Defendants also state that the borrower WILL get taxable forgiveness at the end.  However, this may not always be the case; the statement is literally false.   And again, Defendants incorrectly state that borrowers will be all "set" after a 20-minute call to their lender, which is literally false.

O.    "On the IBR plan, after 20 years, you get student loan forgiveness.  It's the law. You have to make all 240 payments under IBR and you're free.  Remember, it's not a "lender", it's the government. However, remember that you'll owe taxes on any amount forgiven. Here's an article that breaks it down: Secret Student Loan Forgiveness. And still, why would you pay that $800 when it can be done for free in about  15-20  minutes  by  calling  your  lender  or  going  online  to StudentLoans.gov?"

   i.    The above statements are false/misleading because: There are many factors that play into this, and it is not nearly as simple as it just being the law.  It is not 20 years payments; it's 240 QUALIFIED payments, with the right types of loans, status of loans, and when the loans were taken out, etc.

P.    On August 31, 2016 at 11:40 pm -- "This is exactly why you should never use these companies.  There is literally nothing they can do for you – they just rephrase things a little differently and sell you on something you don't even need.  If you're on IBR already, and have already consolidated, there is nothing left to do. On IBR, you automatically get forgiveness of any remaining loan balance after 20/25 years.  So do NOT pay these people anything."

LEGAL\28329899\1

i.      The above statements are false/misleading because: Just because someone has consolidated, or is in IBR, it does not always mean that there is nothing left to do. Borrowers need to be recertified each year, meet the qualification each year, and apply for forgiveness once they have met all the qualifications; borrowers do not automatically get forgiveness.  Additionally, the entire balance may not be forgiven depending on the type of loans. Someone may have 20 different loans, have consolidated 15 of them, and still have other loans that do not qualify.

Q.      On September 4, 2016 at 9:51 pm – "They are a docu-prep company which you shouldn't do business with.  It sounds like they weren't clear with you – they are simply changing your repayment plan to IBR and helping you with Public Service Loan Forgiveness.  Both of these are free programs that you can easily sign up for yourself on StudentLoans.gov or with a phone call to your lender.  For this privilege of filling out your name and SSN on 2 forms, you're paying them $968 – that's the difference between the $272 and $30 per month they thing (sic) you qualify for.  Outrageous. If you search our forum, you'll find other stories very similar to you with all different prices being charges (sic) – all too much.  So, best course of action is to call your lender, tell them you want to see if you qualify for Income Based Repayment.  If so, get on it. Then, sign up for Public Service Loan Forgiveness (PSLF).  If you want more info on the requirements of PSLF, check out our video tutorial on PSLF.  "For example, student loan consolidation can be done for free at StudentLoans.gov, but these companies will charge $399 to do it for you.  Or lowering your repayment – all it takes a is a15 (sic) minute

phone call to your lender and you can get your payments lowered by changing your repayment plan.  Why pay $500-6000 for it?"

       i.      The above statements are false/misleading because: Filling out just the name, address, telephone, and SSN is not nearly close to the amount of information that is required; there are many other pieces of information that are required, as well as income documentation.  Again, if this process was as simple as claimed, 70 percent of qualifying borrowers would not have defaulted on their student loans.

R.     On September 14, 2016 at 5:25 pm – "Hi Paul, thanks for your great questions. #1 – While the Dept of Education doesn't mandate this, doesn't mean that working with your lender isn't the best course of action.  Why trust your federal loan servicer?  Because they are legally obligated to service your loan, and are contracted by the U.S. Government.  Working with a random 3rd party docu-prep company is much less trustworthy that a Federal loan servicer."

       i.      The above statements are false/misleading because: Defendants falsely make the blanket statement that customers should trust their federal loan servicers over any SLAC, even though the CFPB launched a public inquiry into student loan servicing practices specifically because loan servicers are known for making the process incredibly difficult.  Among the industry practices that concern the CFPB are the following: Failure to advise borrowers of options that could lessen the likelihood of default; Improperly allocating payments to maximize late fees; Charging late fees during the grace period after the due date; Inconsistent information and help offered to borrowers;

Misrepresentation of minimum payments; Providing inaccurate tax information; Misleading consumers about bankruptcy protections; and Illegal debt collection calls. *See* http://www.studentloanhelp.org/articles/not-doing-enough-loan-service-providers-under-investigation/.  Defendant, who claims to be an "expert," should know better than to make such false and incorrect statements.

54.   Many borrowers have ended up in default after following Defendants' advice and/or purchasing the products and services promoted by Defendants.

55.   Plaintiff has had several borrowers attempt to utilize its service after following Defendants' advice and/or purchasing the products and services promoted by Defendants.

56.   Unfortunately, however, because these borrowers were already in default, Plaintiff was unable to offer any assistance.

57.   According to many borrowers, Plaintiff would have acquired these borrowers as customers but for Defendants' False Statements and/or Deceptive Conduct.

58.   The False Statements and Deceptive Conduct (collectively the "Wrongful Conduct") have caused Plaintiff to lose a substantial amount of revenue and goodwill, and Plaintiff will continue to lose untold amounts of revenue and goodwill unless Defendants are restrained and enjoined from engaging in such Wrongful Conduct.

59.   Defendants were given more than one opportunity to remove the False Statements without consequence, and Defendants failed and refused to do so. Instead, Defendants continue to willfully and maliciously divert customers away from Plaintiff for Defendants' own monetary gain.

COMPLAINT

# FIRST CLAIM FOR RELIEF
## FALSE ADVERTISING AND UNFAIR COMPETITION
## UNDER THE LANHAM ACT § 43(A)(1)(B), 15 U.S.C. § 1125

60.     All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

61.     For the reasons set forth above, the False Statements are literally false, as well as misleading and deceptive.

62.     In connection with advertisements promoting competing products and services, Defendants made the False Statements about Plaintiff and its services.

63.     In addition, Defendants' agents, including but not limited to Does 1-10, made these False Statements in the course of advertising competing products and services and denigrating Plaintiff's services.

64.     The False Statements have the tendency to deceive a substantial segment of its audience because, as explained above, the False Statements were literally false in several ways.

65.     Additionally, several of Plaintiff's prospective customers have actually been diverted away from doing business with Plaintiff.

66.     The False Statements are likely to influence, and have influenced, the purchasing decision of readers because borrowers are being made to believe that Plaintiff's business is a scam and/or its services are unnecessary.

67.     By publishing the False Statements on the Internet, Defendants caused the False Statements to enter interstate commerce.

68.     As a direct and proximate cause of Defendants publishing the False Statements, many of which contain literally false factual statements, it is presumed as a matter of law that Plaintiff has been and/or is likely to be injured, either by direct diversion of sales or by a lessening of goodwill.

LEGAL\28329899\1

69.     Plaintiff is unable assign any dollar value to the loss of goodwill associated with Plaintiff's services.

70.     Accordingly, because Defendants disseminated deceptive advertising, Plaintiff's actual damages are presumed, and Defendants bear the burden of demonstrating that its profits are not due to the False Statements.

71.     Plaintiff is entitled to recover its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

72.     It is impossible to assign a dollar value to the harm caused to Plaintiff's reputation or goodwill, or quantify many of the sales or opportunities that were lost, as a result of the False Statements; accordingly, the harm caused by the False Statements is irreparable, and Plaintiff has no adequate remedy at law.

73.     Plaintiff will continue to suffer irreparable harm if Defendants are not enjoined from making the False Statements.

74.     As a direct and proximate result of the False Statements, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm, including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

75.     According to many borrowers, Plaintiff would have acquired these borrowers as customers but for Defendants' False Statements.

**SECOND CLAIM FOR RELIEF**
**FALSE OR MISLEADING ADVERTISING**
**Cal. Bus. & Prof. Code §17500 *et seq*.**

76.     All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

77.     For the reasons set forth above, the False Statements are literally false, as well as misleading and deceptive.

COMPLAINT

78.    In connection with advertisements promoting competing products and services, Defendants made False Statements about Plaintiff and its services.

79.    In addition, Defendants' agents, including but not limited to Does 1-10, made these False Statements in the course of advertising competing products and services and denigrating Plaintiff's services.

80.    The False Statements have the tendency to deceive a substantial segment of its audience because, as explained above, the False Statements were literally false in several ways.

81.    Additionally, several of Plaintiff's prospective customers have actually been diverted away from doing business with Plaintiff.

82.    According to many borrowers, Plaintiff would have acquired these borrowers as customers but for Defendants' False Statements.

83.    The False Statements are likely to influence, and have influenced, the purchasing decision of readers because borrowers are being made to believe that Plaintiff's business is a scam and/or its services are unnecessary.

84.    By publishing the False Statements on the Internet, Defendants caused the False Statements to enter interstate commerce.

85.    As a direct and proximate cause of Defendants publishing the False Statements, many of which contain literally false factual statements, Plaintiff has been and is likely to be injured, either by direct diversion of sales or by a lessening of goodwill.

86.    Plaintiff is unable assign any dollar value to the loss of goodwill associated with Plaintiff's services.

87.    Past and prospective customers were or are likely to be deceived by these False Statements, as they will likely consider the statements made about Plaintiff to be negative and the statements about competing products and services to be positive, and

COMPLAINT

the statements made are likely to influence the consumer's decision as to whether to use Plaintiff's services or the those promoted by Defendants.

88.    Plaintiff is each entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17500 et seq.  Plaintiff is not seeking damages at law pursuant to this statutory claim.

89.    Unless enjoined, Defendants' and its agents (including but not limited to Does 1-10) actions will continue to cause irreparable injury to Plaintiff.  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code § 17535.

### THIRD CLAIM FOR RELIEF
### UNFAIR, UNLAWFUL, OR FRAUDULENT BUSINESS ACTS
### Cal. Bus. & Prof. Code §17200 *et seq.* And Common Law

90.    All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

91.    Defendants' Deceptive Conduct is a business practice that is unlawful, unfair, and/or fraudulent.

92.    While discussing the different types of purported student loan scams, Defendants mix in their own reviews of certain third-party products and services for which Defendants receive advertising revenue and/or referral fees.

93.    The reviews or plugs to these products and services are relevant to the topics being discussed in the article and are blended in to be a part of the article so that many readers are unaware that they are actually reading an advertisement.

94.    Defendants place affiliate links in the reviews or plugs; the reader can click on these affiliate links and be brought to the third-party website where the purchase can be made.

95.    However, Defendants fail to have a conspicuous disclaimer near the hyperlinks.

**COMPLAINT**

LEGAL\28329899\1

96.     The Deceptive Conduct is such that members of the public are likely to be deceived.

97.     Defendants' publication of the False Statements is also a business practice that is unlawful, unfair, and/or fraudulent.

98.     In several articles and comments, Defendants urge borrowers to seek to qualify for certain student loan programs without any assistance and repeatedly tell borrowers how simple it is to get qualified; however, Defendants are well aware that many borrowers will try this, end up frustrated but scared to deal with a SLAC (thanks to Defendants) and then go back on the Site for more "guidance" (i.e. ready to purchase a product or service being offered or promoted by Defendants, who are now perceived to be experts by the borrower).

99.     This design is intended to slowly build-up the reader's confidence in the Defendants, alienate the logical competitor (which is a SLAC), and convince the unknowing borrower to purchase the products or services on the Site.

100.    The False Statements, and/or the manner in which they are published, are likely to deceive members of the public.

101.    As a direct and proximate cause of Defendants' Deceptive Conduct and/or False Statements, Plaintiff has been and is likely to be injured, either by direct diversion of sales or by a lessening of goodwill.

102.    Plaintiff is each entitled to restitution pursuant to California's unfair competition statute, Cal. Bus. & Prof. Code § 17200 et seq.  Plaintiff is not seeking damages at law pursuant to this statutory claim.

103.    Unless enjoined, Defendants' and its agent's actions will continue to cause irreparable injury to Plaintiff.  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

///

///

COMPLAINT

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendants and L. Farrington as follows:

A. Upon the filing of a Motion for Injunctive Relief, for a preliminary and permanent injunction compelling Defendants to remove the False Statements from the Internet;

B. Upon the filing of a Motion for Injunctive Relief, for a preliminary and permanent injunction compelling Defendants to cure the Deceptive Conduct by providing the appropriate disclaimers in close proximity of all affiliate links on the Site;

C. Upon the filing of a Motion for Injunctive Relief, for a preliminary and permanent injunction compelling Defendants to remove all affiliate links until Defendants provide the appropriate disclaimers in close proximity of all affiliate links on the Site;

D. Upon the filing of a Motion for Injunctive Relief, for a preliminary and permanent injunction enjoining Defendants from publishing any additional False Statements on the Internet;

E. For an order requiring Defendants to account to Plaintiff and disgorge all profits that were and are derived from Defendants' False Statements;

F. For an order requiring Defendants to return to Plaintiff the ill-gotten gains obtained by Defendant as a result of the False Statements and/or Deceptive Conduct;

G. For general damages awarded against Defendants and L. Farrington in an amount to be proven at trial;

H. For special damages awarded against Defendants and L. Farrington in an amount to be proven at trial;

LEGAL\28329899\1

I.      For Plaintiff's costs awarded against Defendants and L. Farrington;

J.      For Plaintiff's reasonable attorneys' fees awarded against Defendants and L. Farrington;

K.      For interest on the foregoing attorneys' fees and court costs at the statutory rate from the date of judgment until paid;

L.      For prejudgment and post-judgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

M.      For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 14th day of October, 2016.

Daniel R. Warner, Esq.                    */s/ Matthew S. Steinberg*
Arizona Bar # 026503                      Matthew S. Steinberg, Esq.
(*Pro Hac Vice Pending*)                  COZEN O'CONNOR
KELLY / WARNER, PLLC                      601 S. Figueroa Street, Suite 3700
8283 N. Hayden Road, Suite 229            Los Angeles, CA 90017
Scottsdale, Arizona 85258                 Tel: (213) 892-7924
Tel: (480) 331-9397                       Fax: (213) 892-7999
Fax: (866) 961-4984                       Email: msteinberg@cozen.com
Email: dan@kellywarnerlaw.com
                                          *Attorneys for Plaintiff*

30

**COMPLAINT**

LEGAL\28329899\1

# DEMAND FOR JURY TRIAL

Plaintiff, by and through undersigned counsel, hereby demands a trial by jury for all questions of fact that can be decided by a jury in the above-entitled action.

RESPECTFULLY SUBMITTED this 14th day of October, 2016.

Daniel R. Warner, Esq.
Arizona Bar # 026503
(*Pro Hac Vice Pending*)
KELLY / WARNER, PLLC
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Tel: (480) 331-9397
Fax: (866) 961-4984
Email: dan@kellywarnerlaw.com

*/s/ Matthew S. Steinberg*
Matthew S. Steinberg, Esq.
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Tel: (213) 892-7924
Fax: (213) 892-7999
Email: msteinberg@cozen.com

*Attorneys for Plaintiff*

31

**COMPLAINT**